# Exhibit A

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| AMBER CHAUDHRY, individually and on behalf of all others similarly situated, | CIVIL DIVISION |
| *Plaintiff*, | No. _____ |
| v. | Code: _____ |
| AMAZON.COM SERVICES LLC, | CLASS ACTION |
| *Defendant*. | |

## CLASS ACTION COMPLAINT

Plaintiff Amber Chaudhry, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Amazon.com Services LLC. Plaintiff alleges the following based upon personal knowledge as to Plaintiff's own experiences, and as to all other matters upon information and belief, including investigation conducted by Plaintiff's counsel.

## NATURE OF THE CASE

1. Plaintiff seeks injunctive and declaratory relief curtailing unlawful business practices related to consumer warranties for products sold by Amazon.com Services LLC ("Amazon" or "Defendant").

2. The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 ("Magnuson-Moss," the "Act," or "MMWA"), and its implementing regulations, 16 CFR §§ 700.1, *et seq.*, require that retailers provide consumers with access to any written warranty for a product costing more than $15, prior to the point of sale (referred to herein as the "Pre-Sale Availability Rule").

3. The Pre-Sale Availability Rule guarantees consumers an opportunity to be fully informed about warranty terms and conditions so they may choose a product with the best combination of price, features, and warranty coverage to meet their individual needs.

1

4. In doing so, the Pre-Sale Availability Rule promotes competition among sellers to meet consumer preferences.

5. To comply with Magnuson-Moss's Pre-Sale Availability Rule, sellers must make the terms of a product's written warranty "readily available for examination by the prospective buyer" by either (1) displaying the warranty "in close proximity" to the product or (2) placing signs around the store in prominent locations, alerting the consumer that he or she may inspect product warranties upon request. This obligation extends to any product with a written warranty that costs more than $15. 16 C.F.R. § 702.3.

6. Unfortunately, Defendant does not provide consumers with access to written warranties, prior to sale, in a manner that complies with the Pre-Sale Availability Rule.

7. Defendant's noncompliance is self-serving. Defendant is part of a global extended warranty industry that generated $120.79 billion in 2019 and is projected to reach $169.82 billion by 2027, growing at a compound annual growth rate of 7.4% from 2020-2027.[1] By offering its own "protection plans" and extended warranties to consumers at the point of sale, instead of giving consumers access to the manufacturer warranties included in their purchases already, Defendant increases the odds that consumers will purchase Defendant's own duplicative warranty services.[2]

8. Plaintiff seeks an order requiring Defendant to provide Pennsylvania consumers with pre-sale access to the warranties that Magnuson-Moss's Pre-Sale Availability Rule requires.

---

[1] Yahoo, "Extended Warranty Market to Reach $169.82 Bn, Globally, by 2027 at 7.4% CAGR: Allied Market Research" (Jan. 24, 2022) (available at: https://www.yahoo.com/now/extended-warranty-market-reach-169-083000210.html?guccounter=1).
[2] Beth Braverman, "Why You Should Steer Clear of Extended Warranties," Consumer Reports (Dec. 22, 2018) (available at: https://www.consumerreports.org/extended-warranties/steer-clear-extended-warranties-a3095935951/) ("Two-thirds of in-store electronic shoppers and nearly three-quarters of appliance purchasers say that an associate has pitched one to them.").

2

## PARTIES

9. Plaintiff Amber Chaudhry is a resident of Allegheny County, Pennsylvania.

10. Defendant Amazon.com Services LLC is a retailer based in Washington.

11. Defendant sells goods that cost more $15 and are subject to manufacturer warranties.

## JURISDICTION AND VENUE

12. This Court has personal jurisdiction over Defendant because Defendant directs its conduct at Pennsylvania, transacts business in Pennsylvania, is registered to do business in Pennsylvania, has substantial contacts with Pennsylvania, engaged and is engaging in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in Pennsylvania, and purposely availed itself of the laws of Pennsylvania.

13. Defendant's activities in Pennsylvania gave rise to the claims identified herein.

14. Venue is proper in Allegheny County because Defendant conducts substantial business in Allegheny County and the conduct described herein occurred in Allegheny County.

## EXCLUSIVE STATE COURT JURISDICTION
## PURSUANT TO 15 U.S.C. § 2310

15. Exclusive jurisdiction lies with this Court pursuant to 15 U.S.C. § 2310.

16. Magnuson-Moss authorizes injured consumers to bring suit for "legal and equitable relief…in any court of competent jurisdiction in any State." 15 U.S.C. § 2310(d)(1)(A).

17. However, the Act imposes specific limitations on the exercise of jurisdiction by federal courts, stating that "no claim shall be cognizable" in federal district court "(A) if the amount in controversy of any individual claim is less than the sum or value of $25; (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." *Id*. § 2310(d)(3)(A)-(C).

18. Plaintiff solely seeks equitable and declaratory relief individually and on behalf of all Class Members in the form of Defendant complying with the Pre-Sale Availability Rule.

19. Neither Plaintiff nor any Class Member asserts an individual claim for damages at all, much less one valued at $25 or greater.

20. Neither of the requirements for federal jurisdiction set forth under § 2310(d)(3)(A) or § 2310(d)(3)(B) are satisfied.

21. Further, because there are not one hundred named plaintiffs in this action, the requirement for federal jurisdiction set forth under § 2310(d)(3)(C) is not satisfied.

22. Because none of the requirements for federal jurisdiction are satisfied under § 2310(d)(3), this Court has exclusive jurisdiction over this Action.

## COMMON FACTUAL ALLEGATIONS

23. Magnuson-Moss is a consumer-protection law passed in 1975 to clarify how written warranties may be used when marketing products to consumers.[3]

24. A warranty is a warrantor's promise to stand behind its product. It is a statement about the integrity of the product and a commitment to correct problems if the product fails.[4]

25. In passing Magnuson-Moss, Congress encouraged sellers to offer warranties to assure consumers and to foster competition for the best products. Although sellers are not required to provide warranties, many consumers are skeptical of products that do not have one.

26. Magnuson-Moss creates multiple consumer protections related to warranties. Most deal with the substance of the warranties, themselves (*i.e.*, what a warrantor must—and must not—include as a term or a representation).

---

[3] 15 U.S.C. §§ 2301, *et seq.*
[4] FTC, "Businessperson's Guide to Federal Warranty Law" (available at https://www.ftc.gov/business-guidance/resources/businesspersons-guide-federal-warranty-law).

27. But Magnuson-Moss also recognizes the need of consumers to have access to warranties when evaluating whether or not to buy a given product, as the strength of the warranty is a meaningful data point when considering a new purchase.

28. Consumers have a right to choose a product with the best combination of price, features, and warranty coverage to meet their individual needs. As Congressman Moss stated in support of the law:

> One of the most important effects of this bill will be its ability to relieve consumer frustration by promoting understanding and providing meaningful remedies. This bill should also foster intelligent consumer decisions by making warranties understandable. At the same time, warranty competition should be fostered since consumers would be able to judge accurately the content and differences between warranties and competing consumer products.
>
> Perhaps one of the potentially most important and long range effects of this bill resides in its attempt to assure better product reliability. The bill…attempts to organize the rules of the warranty game in such a fashion to stimulate manufacturers, for competitive reasons, to produce more reliable products. This is accomplished using the rules of the marketplace by giving the consumer enough information and understanding about warranties so as to enable him to look to the warranty duration of a guaranteed product as an indicator of the product reliability.[5]

29. The Senate report accompanying the introduction of Magnuson-Moss further clarified the need for and purpose of the law:

> When the use of a warranty in conjunction with the sale of a product first became commonplace, it was typically a concept that the contracting parties understood and bargained for, usually at arms length. One could decide whether or not to purchase a product with a warranty and bargain for that warranty accordingly. Since then, the relative bargaining power of those contracting for the purchase of consumer products has changed radically. Today, most consumers have little understanding of the frequently complex legal implications of warranties on consumer products. Typically, a consumer today cannot bargain with consumer product manufacturers or suppliers to obtain a warranty or to adjust the terms of a warranty voluntarily offered. Since almost all consumer products sold today are typically done so with a contract of adhesion, there is no bargaining power over contractual terms. [Magnuson-Moss] attempts to remedy some of the defects resulting from this gross inequality of bargaining power and return the sense of fair play to the warranty field

---

[5] Federal Register/Vol. 40, No. 251/60168.

5

that has been lost through the years as the organizational structure of our society has evolved. The warranty provisions of [Magnuson-Moss] are not only designed to make warranties understandable to consumers, but to redress the ill effects resulting from the imbalance which presently exists in the relative bargaining power of consumers and suppliers of consumer products.[6]

30. Thus, Magnuson-Moss has a Pre-Sale Availability Rule that guarantees consumers a right of access to complete information about warranty terms and conditions before purchasing products that cost more than $15.[7]

31. The Pre-Sale Availability Rule places distinct obligations both on warrantors *and* retailers, like Defendant.

32. Pursuant to the Rule, a "seller"[8] of any consumer product costing more than $15 and subject to a written warranty shall make a text of the warranty readily available for examination by the prospective buyer by:

> (1) Displaying it in close proximity to the warranted product (including through electronic or other means…), or
>
> (2) Furnishing it upon request prior to sale (including through electronic or other means…) and placing signs reasonably calculated to elicit the prospective buyer's attention in prominent locations in the store or department advising such prospective buyers of the availability of warranties upon request.[9]

33. While the Rule allows sellers to display or otherwise provide the text of a warranty "through electronic…means," it is not enough for sellers to refer customers to a product manufacturer's website. In allowing for the electronic presentment of warranty terms,

> Congress's intention…was not to disturb prospective purchasers' ability to obtain the full warranty terms at the point of sale, as envisioned by the Pre-Sale Availability Rule. While consumers with electronic devices and Internet

---

[6] Senate Comm. On Commerce, Report on S. 356, S. Rep. No. 93-151, 93d Cong., 1st Sess. (1973), at 6.
[7] *See,* 16 C.F.R. § 702.3.
[8] Defined as "any person who sells or offers for sale for purposes other than resale or use in the ordinary course of the buyer's business any consumer product." 16 C.F.R. § 702.1(e).
[9] 16 C.F.R. § 702.3(a) ("Duties of seller").

connectivity may be able to review warranty terms at the point of sale by visiting the Web site that contains the warranty terms, not all consumers have such devices and Internet connectivity.[10]

34. Thus, all retailers, including Defendant, are obligated to make the full terms of a product's written warranty accessible by consumers—without consumers resorting to their own Internet-enabled device—prior to the point of sale.

35. Defendant fails to satisfy this obligation. Indeed, virtually all of the products—if not every single product—sold on Defendant's platform are presented to the consumer without any pre-sale access to the product's warranty. Instead, the first time consumers can access the warranty is upon opening the product's packaging, after making a purchase.

36. For example, Defendant sells Waykar dehumidifiers. If consumers search for and select a Waykar dehumidifier like the one Plaintiff purchased (either through Amazon's search feature or through the URL prompt entitled, "Visit the Waykar Store"[11]), Defendant will redirect them to a page offering consumers the opportunity to purchase not just Waykar's dehumidifier but also various Protection Plans that Defendant sells, ranging in price from $21.99 to $29.99.[12]

---

[10] Federal Register/Vol. 81, No. 179/63666.
[11] *See* "Waykar Store" on Amazon.com (last accessed July 19, 2022) (available at: https://www.amazon.com/stores/Waykar/page/80481F8A-DD64-4681-970A-A1A8B1436600?ref_=ast_bln).
[12] *See,* Amazon.com, (last accessed July 19, 2022) (available at: https://www.amazon.com/Waykar-Dehumidifier-Basement-Continuous-Reusable/dp/B08PPDXLL2?ref_=ast_sto_dp).



37. What consumers cannot do, however, is find the terms of the Waykar warranty that is included in the dehumidifier's underlying purchase price. Instead, if consumers scroll down to the "Product Information" portion of the webpage, and find the section titled "Warranty & Support," Defendant directs them to follow an unexplained URL link.[13]

38. After consumers click the URL link to obtain "warranty information," Defendant redirects them to an almost empty webpage containing only a single line of text that provides:

---

[13] *Id.*

"Please contact the seller directly for warranty information for this product. You may also be able to find warranty information on the manufacturer's website."[14]



39. Defendant violates the Pre-Sale Availability Rule by referring consumers to Waykar's website, generally, without also including a link to a downloadable or printable version of the entire text of the Waykar's manufacturer's warranty, before the point of sale. [15]

## PLAINTIFF'S SPECIFIC ALLEGATIONS

40. Over time, Plaintiff has purchased several products costing more than $15 from Defendant's platform that include manufacturer's warranties, including the Product at issue here, which she purchased on or about October 20, 2021.

41. In the course of purchasing the Product, Defendant did not display product warranties in close proximity to the Product, and—consistent with the description in paragraphs 24-38 *supra*—Defendant failed to display any warranty information on its platform.

42. Plaintiff anticipates buying new products costing more than $15 that are subject to manufacturer warranties in the future, and would consider purchasing said products from

---

[14] *See,* Amazon, (last accessed July 19, 2022) (available at: https://www.amazon.com/b?node=23986507011&ref_=cs_fdm_1002406021-23986507011).

[15] Federal Register/Vol. 81, No. 179/63665, n. 14 ("The requirement to make warranties available at the point of purchase can be accomplished easily with respect to online sales by, for example, using a clearly-labeled hyperlink, in close proximity to the description of the warranted product, such as 'get warranty information here' to lead to the full text of the warranty, and presenting the warranty in a way that it can be preserved, either by downloading or printing, so consumers can refer to it after purchase.").

Defendant, but does not wish to have her rights under Magnuson-Moss thwarted by Defendant's failure to comply with the Pre-Sale Availability Rule.

## CLASS ALLEGATIONS

43. Plaintiff brings this action individually and on behalf of all others similarly situated under Rules 1702, 1708, and 1709 of the Pennsylvania Rules of Civil Procedure.

44. Plaintiff seeks to certify the following Class: "All persons in Pennsylvania who purchased one or more products from Defendant that (a) cost more than $15 and (b) included a written manufacturer's warranty."

45. Plaintiff reserves the right to modify or refine the Class definition based upon discovery of new information or in order to accommodate any concerns of the Court.

46. Excluded from the Class are Defendant, Defendant's parents, subsidiaries, affiliates, officers and directors, any entity in which any defendant has a controlling interest, governmental entities, and all judges presiding over this litigation, as well as their immediate family members, and members of the staffs of the judges to whom this case may be assigned.

47. Pa. R. Civ. P. 1702(1), 1708(a)(2): The Class is so numerous that joinder of its Class Members is impracticable. Upon information and belief, the Class contains thousands of individuals, at least. The precise number can be determined by reference to Defendant's records.

48. Pa. R. Civ. P. 1702(2), 1708(a)(1): Plaintiff and each Class Member share numerous common questions of law and fact that will drive the resolution of the litigation and predominate over any individual issues. For example, there is a single common answer to the questions of whether Defendant's acts and practices complained of herein violate Magnuson-Moss; and the appropriate injunctive relief to ensure Defendant no longer violates the Pre-Sale Availability Rule. The answers to these questions are the same for Plaintiff and each Class

Member, and Plaintiff and each Class Member require the same proof to answer these questions. These questions, and others, predominate over any individual issues.

49. <u>Pa. R. Civ. P. 1702(3)</u>: Plaintiff's claims are typical of the claims of each Class Member because the claims are based on the same legal theories and arise from the same conduct.

50. <u>Pa. R. Civ. P. 1702(4), 1709</u>: Plaintiff is an adequate representative of each Class Member because the interests of Plaintiff and each Class Member align. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of each Class Member and has no interest antagonistic to any Class Member. Plaintiff retained counsel who are competent and experienced in the prosecution of class action litigation generally and consumer class actions specifically. Plaintiff has or can acquire adequate financial resources to assure that the interests of each Class Member will not be harmed.

51. <u>Pa. R. Civ. P. 1708(a)(3), (6), (7)</u>: Given the nature of the issues presented and the relief requested, the expense and time necessary to obtain such relief, and the anticipated recovery and relief that Plaintiff and each Class Member may obtain, the class action mechanism is by far the preferred and most efficient litigation mechanism to adjudicate the claims of Plaintiff and each Class Member. Additionally, requiring Plaintiff and each Class Member to file individual actions would impose a crushing burden on the court system. Class treatment presents far fewer management difficulties and provides benefits of a single adjudication and economies of scale.

52. <u>Pa. R. Civ. P. 1708(a)(4)</u>: Based on Plaintiff's knowledge and of undersigned counsel, there are no similar cases currently pending in this Court against Defendant.

## CAUSE OF ACTION

### FIRST CAUSE OF ACTION
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.**

53. Plaintiff incorporates the allegations contained in the preceding paragraphs.

54. Plaintiff is a "consumer," as defined in MMWA, 15 U.S.C. § 2301(3).

55. Defendant is a "seller," as defined in MMWA, 16 C.F.R. § 702.1(e).

56. Defendant sells products that include "written warranties," as defined in MMWA, 15 U.S.C. § 2301(6); 16 C.F.R. § 702.1(c).

57. Defendant sells products that are "consumer products," as defined in MMWA, 15 U.S.C. § 2301(1); 16 C.F.R. § 702.1(b).

58. Consistent with 16 C.F.R. § 702.3, as a seller of consumer products with written warranties, for all products costing more than $15, Defendant must display product warranties in close proximity to the relevant product, or place signs reasonably calculated to elicit consumers' attention, in prominent locations in the store or department, advising consumers of the availability of warranties upon request. 16 C.F.R. § 702.3(a). Defendant does neither of these things.

59. Plaintiff has been damaged as a result of Defendant's failure in this regard.

60. Because Plaintiff has purchased, would like to, and is likely to purchase products from Defendant in the future that cost more than $15 and include manufacturer warranties, Plaintiff is entitled to injunctive relief and corresponding declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

a. Certify this case as a class action, appoint Plaintiff as Class representative, and appoint Plaintiff's counsel to represent the Class;

b. Find that Defendant's actions, as described herein, constitute violations of Magnuson-Moss;

c. Enter judgment against Defendant for all injunctive, declaratory, and other equitable relief sought;

d. Award all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action; and

e. Grant such other legal and equitable relief as the Court may deem appropriate.

Dated: July 26, 2022                                   Respectfully submitted,

/s/ Edwin J. Kilpela, Jr.
Edwin J. Kilpela, Jr.
PA ID # 201595
Elizabeth Pollock-Avery
PA ID# 314841
Kenneth A. Held
PA ID # 330442
**LYNCH CARPENTER, LLP**
1133 Penn Ave, 5th Floor
Pittsburgh, Pennsylvania 15222
Tel:    (412) 322-9243
Fax:    (412) 231-0246
ekilpela@lcllp.com
elizabeth@lcllp.com
ken@lcllp.com

Kevin Tucker (He/Him)
PA ID # 312144
Kevin J. Abramowicz (He/Him)
PA ID # 320659
Chandler Steiger (She/Her)
PA ID # 328891
Stephanie Moore (She/Her)
PA ID # 329447
**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel. (412) 877-5220
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Attorneys for Plaintiff and the Class*

13

## VERIFICATION

I, Amber Chaudhry, am fully familiar with the facts set forth in this Complaint. I verify that the averments contained in this Complaint are true and correct to the best of my knowledge, information, and belief. I understand any false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Dated: July 25, 2022                              */s/ Amber Chaudhry*
                                                                Amber Chaudhry (e-signed with permission)